Tionna Dolin (SBN: 299010)
tdolin@slpattorney.com
Ariel S. Harman-Holmes (SBN : 315234)
aharman-holmes@slpattoreny.com
**STRATEGIC LEGAL PRACTICES, APC**
1888 Century Park East, 19th Floor
Los Angeles, CA 90067
Tel: (310)929-4900
Fax: (310)943-3838
Attorneys For Plaintiffs,
NATHAN ABLES AND JENNIFER ABLES

SPENCER P. HUGRET (SBN: 240424)
shugret@grsm.com
JAMES P. MAYO (SBN: 169897)
jmayo@grsm.com
RESHMA A. BAJAJ (SBN 227106)
rbajaj@grsm.com
**GORDON REES SCULLY MANSUKHANI, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 875-3193
Facsimile: (415) 986-8054

Attorneys for Defendant
FCA US LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN ABLES and JENNIFER ABLES,<br><br>　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>FCA US LLC; et al,<br><br>　　　　　　　Defendants. | **Case No.** 822-cv-00147-MEMF-AS<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**JOINT RULE 26(f) REPORT**<br><br>CMC: December 8, 2022<br>Time: 10:00 a.m.<br>Courtroom:  8C |

Pursuant to Federal Rule of Civil Procedure 26(f) and the Order Setting Scheduling Conference issued September 2, 2022 (Dkt. 24), Plaintiffs NATHAN ABLES and JENNIFER ABLES ("Plaintiffs") and Defendant FCA US LLC ("FCA") (collectively, "the Parties") submit the following Joint Rule 26(f) Report. The Parties, by and through their respective counsel, have met and conferred as required and within the timelines proscribed.

## 1. SUBJECT MATTER JURISDICTION

### A.   <u>Plaintiffs' Position</u>:

Plaintiffs originally filed this action in the Superior Court for the State of California, County of Orange. Defendant removed the case to Federal Court on January 28, 2022. Plaintiffs reserve the right to file a Motion to Remand.

All Defendants have been served and appeared.

### B.   <u>Defendant's Position</u>:

This removed case is a civil action commenced in the Superior Court of California, County of Orange, by Plaintiffs NATHAN ABLES and JENNIFER ABLES against FCA US LLC ("FCA").  Plaintiffs filed the State Action on December 16, 2021, asserting breach of implied and express warranty under the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act against Defendant FCA. Plaintiffs also allege a cause of action for fraudulent inducement-concealment.

This Court has subject matter jurisdiction in this matter under 28 U.S.C. § 1331 because Plaintiffs allege claims pursuant to 15 U.S.C. § 2310, the Magnuson-Moss Warranty Act, with an amount in controversy that exceeds $50,000 (pursuant to 15 U.S.C. § 2310(d)(3)(B)).  Jurisdiction is also appropriate pursuant to 28 U.S.C. § 1332 because Plaintiffs and FCA are citizens of different states and the amount in controversy exceeds $75,000.

/ / /

/ / /

## 2. STATEMENT OF THE CASE

### A.    **Plaintiffs' Factual Statement:**

On or about September 12, 2020, Plaintiffs entered into a warranty contract with Defendant FCA regarding a 2018 Chrysler Pacifica, VIN 2C4RC1GG8JR185749 ("Vehicle"), which included but was not limited to, a bumper-to-bumper warranty, a powertrain warranty, and an emission warranty. Under the terms of the express written warranty FCA undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time. The warranty provided, in relevant part, that in the event a defect developed with the Vehicle during the warranty period, Plaintiffs could deliver the Vehicle for repair services to Defendant's representative and the Vehicle would be repaired.

During the applicable warranty period, the Vehicle developed symptoms of latent defects including the electrical system, the engine, defects causing stalling, and the transmission. FCA's actions were willful in that FCA was aware that it was unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet failed and refused to promptly replace the Vehicle or make restitution.

Plaintiffs allege that FCA's conduct was willful in that its representative were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet FCA failed and refused to promptly replace the Vehicle or make restitution. FCA failed to disclose that the subject vehicle and its electrical system was defective and susceptible to sudden and premature failure. Defendant was in a superior position through access to internal sources of information not available to Plaintiffs to know of these Defects. Had Defendant disclosed these defects, Plaintiffs would not have chosen to purchase the Vehicle.

/ / /

Plaintiffs further allege that FCA committed fraud by allowing the Subject Vehicle to be sold to Plaintiffs without disclosing its Defects. Defendant was in a superior position through access to internal sources of information not available to Plaintiffs to know of these Defects. Had Defendant disclosed these defects, Plaintiffs would not have chosen to purchase the Vehicle.

**B.   FCA's Factual Statement:**

This case involves a 2018 Chrysler Pacifica ("Subject Vehicle") purchased through a Swiss broker while Plaintiff NATHAN ABLES was on active military duty in Germany.  In August 2020,  the Subject Vehicle was transported to New Mexico, where three repairs were performed. On October 6, 2021 an accident was reported to Carfax. The vehicle was involved in a sideswipe collision and there was minor damage to the right front and right side. The vehicle was declared a Total Loss on December 13, 2021. A Salvage Title/Certificate was issued on February 25, 2022.  All of the US repairs were done at dealerships in New Mexico, and the salvage title was issued in New Mexico.  Apparently Plaintiff moved to California sometime after the salvage title was issued, but that is not clear.  FCA is not  aware of any repairs to the Subject Vehicle conducted in California.

Plaintiffs' Complaint, filed on December 16, 2021, alleges four causes of action under the California Song-Beverly Consumer Warranty Act, a fifth cause of action for "Fraudulent Inducement – Concealment," and a sixth cause of action under the federal Magnusson-Moss Warranty Act, all against FCA as the sole defendant.  According to the Complaint, Plaintiffs purchased the Subject Vehicle on April 7, 2018.  (Complaint  at ¶ 13.)  In the Complaint, Plaintiffs allege the Subject Vehicle suffered from various defects, including an alleged "Stalling Defect."  (Complaint at  ¶¶ 20-41, 69-77.)  Plaintiffs allege they "were harmed by purchasing a vehicle that Plaintiffs would not have leased/purchased had Plaintiffs known the true facts about the Stalling Defect." (Complaint at ¶ 73), and they seek actual, consequential and incidental damages, civil penalties, punitive damages,

prejudgment interest, and attorney's fees, costs and expenses. (Complaint, Prayer for Relief.) In other words, Plaintiffs wants their money back. Plaintiffs do not allege personal injury or property damages in the Complaint. (Id.)

FCA denies the essential allegations of the Complaint. FCA denies the Subject Vehicle was sold with defects or non-conformities, including, but not limited to any alleged issues identified in the Complaint. It is FCA's position that, to the extent the Subject Vehicle experienced any problems or issues requiring repair or service by FCA's independently-owned repair facilities, any such problems or issues were not defects; not covered by the warranty; do not substantially impair the use, value or safety of the Subject Vehicle; or have been repaired within a reasonable number of repair attempts, and thus, do not trigger FCA's obligation to repurchase or replace the Subject Vehicle pursuant to the Song-Beverly Act or the Magnusson-Moss Warranty Act. FCA also contends that the Subject Vehicle was fit for the ordinary purposes for which vehicles are used. FCA further contends that concerns which manifest themselves more than one year after purchase of the vehicle cannot form the basis for a breach of the implied warranty under California Civil Code Section 1795.5(c).

FCA further asserts that Plaintiffs' fraud claim lacks merit, is not plead with sufficient particularity, is a tort claim barred by the Economic Loss Rule, Plaintiff cannot and has not demonstrated the essential elements to maintain it, and Plaintiffs' claim for punitive damages fails with her fraud claim. FCA also asserts that Plaintiffs are not entitled to any civil penalty because no such penalties are available under the applicable law.

Moreover, FCA contends that Plaintiffs received timely notice of the availability of a third-party dispute resolution process but made no effort to use such process. FCA further denies the allegations in the Complaint, denies Plaintiffs have been damaged, and also denies that Plaintiffs are entitled to any statutory attorney's fees.

## 3. LEGAL ISSUES

### A.    Plaintiffs' Statement:

Based on the facts set forth in the Complaint, Plaintiffs brought the following six (6) causes of action:

1)  Violation of the Song-Beverly Act, § 1793.2(D) (failure to promptly replace the Vehicle or make restitution to Plaintiff),

2)  Violation of the Song-Beverly Act, § 1793.2(B) (failure to commence service or repairs within a reasonable time and failure to repair the Vehicle to conform to the applicable warranties within 30 days),

3)  Violation of the Song-Beverly Act, § 1793.2(A)(3) (failure to make available to its authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period),

4)  Breach of the Implied Warranty of Merchantability (Civil Code §§ 1791.1, 1794, and 1795.5),

5)  Fraudulent Inducement – Concealment, and

6)  Violation of the Magnuson-Moss Warranty Act.

Plaintiffs are unaware of any other unusual substantive, procedural, or evidentiary issues.

### B.    Defendant's Statement:

The primary law applicable to this matter is the Song-Beverly Consumer Warranty Act, which is a well-developed body of law. The procedural aspects of this matter will be governed by federal law.   FCA disputes Plaintiffs' right to claim and/or recover damages, including civil penalties and punitive damages.  In particular, FCA notes that although Song-Beverly provides a cause of action for active duty military personnel who live in California, that provision of the Act (Civil Code section 1795.8) applies to vehicles purchased in the United States, which is not the case here.  FCA also reserves the right to further object to particular damages claimed by Plaintiffs as discovery is conducted.

## 4. PARTIES AND EVIDENCE

**Parties:** Plaintiffs Nathan Ables and Jennifer Ables and Defendant FCA US, LLC are the only parties to this lawsuit. All parties have been served and appeared. Plaintiffs reserves her right to add parties after discovery has been completed

### Percipient Witnesses

*Plaintiffs' Position:*

Plaintiffs Nathan Ables and Jennifer Ables, Person Most Knowledgeable on behalf of Defendant FCA US, LLC that has yet to be identified. Plaintiffs believe that there will be additional percipient witnesses once written discovery is completed.

*Defendant's Position:*

Plaintiffs, and any persons identified by Plaintiffs in their initial disclosures or in discovery: Information concerning when Plaintiff acquired the Subject Vehicle; current information regarding the Subject Vehicle (including location, mileage, identification of drivers, insurance company and re-sale information); accidents, maintenance, modifications, service, and any alleged complaints and nonconformities/defects for the subject vehicle; documents supporting damages or damage to the Subject Vehicle, including insurance claims; information and documents to support Plaintiffs' civil penalty claim; Plaintiffs' visits to the dealerships and any independent repair facilities, the concerns and repairs listed in the repair orders, the cause of the various mechanical concerns, any repairs not covered under warranty, any communications with FCA, or its authorized dealers, and any third party regarding the Subject Vehicle, including the substance of any communications they may have had with FCA or its Customer Assistance Center ("CAC").

Persons involved in the sale, maintenance and service of the Subject Vehicle, including but not limited to, any dealership personnel (including persons involved in the sales, maintenance and service of the Subject Vehicle,

and its Person Most Qualified), including those individuals identified on the repair and maintenance records.  In general, they possess information concerning the sale and/or service performed on the subject vehicle, and any communications with Plaintiffs concerning the Subject Vehicle.

Representatives of FCA including FCA's personal most knowledgeable ("PMK"), to be determined.[1]  In general, the PMK will provide information concerning the repair history of the subject vehicle, the warranty history of the Subject Vehicle, the nature of any written warranties provided to Plaintiff for the Subject Vehicle, any communications with the dealership(s) regarding the Subject Vehicle, and, FCA's policies and procedures for evaluating repurchase or replacement requests under the Song-Beverly Consumer Warranty Act.

FCA's to-be-identified expert witness(es). At this time, FCA has not determined if other engineers or employees may be required to rebut issues raised by Plaintiffs' experts, or to discuss the context or contents of relevant documents.

Anyone who inspected, diagnosed, or repaired the Subject Vehicle that was not an authorized FCA US dealer.  None are known at this time.

Any witnesses necessary to authenticate documents.

Any necessary rebuttal witnesses or impeachment witnesses.

---

[1]    As stated in its "Certification of Interested Parties," FCA US LLC is a Delaware limited liability company and is not publicly owned.  It is one hundred percent owned by FCA North America Holdings LLC which is a Delaware limited liability company.  FCA North America Holdings LLC is one hundred percent owned by FCA Holdco B.V. (Besloten Vennootschap), a company organized under the laws of the Netherlands with its principal place of business in London, United Kingdom. FCA Holdco B.V. is one hundred percent owned by Stellantis N.V. (formerly known as Fiat Chrysler Automobiles N.V.), which is a publicly traded company incorporated under the laws of the Netherlands. Neither FCA US LLC, FCA North America Holdings LLC, FCA Holdco B.V. nor Stellantis N.V. is a citizen of California.

JOINT RULE 26(f) REPORT

**Key Documents**

*Plaintiffs' Position*

The sales brochure for the Vehicle which is the subject of this action.

The warranty booklet for the Vehicle which is the subject of this action.

The purchase agreement and sales file for the Vehicle which is the subject of this action.

The repair orders and invoices for repair attempts made to the Vehicle.

Documents showing Plaintiffs' damages, including insurance, DMV registration receipts showing amounts paid and/or the repair orders paid for by Plaintiff.

The Complaint.

The Answer.

Documents related to Defendant's lemon law policies and procedures, repair attempts related to the Vehicle, and internal investigation and analysis (including ESI) as to the alleged defects in Plaintiffs' Vehicle and other similarly situated vehicles.

Vehicle inspection documents.

Applicable technical service bulletins and recalls.

Communications between FCA and Plaintiffs, if any, regarding the Vehicle.

Expert Reports.

*Defendant's Position:*

In addition to the above:

The Owner's Manual, Warranty Guide, and other glove box materials for the Subject Vehicle.

Communications between FCA and its dealers, if any, regarding the Subject Vehicle.

The Warranty Claim Summary Report pertaining to the Subject Vehicle.

The Warranty Claim Reports pertaining to the Subject Vehicle.

JOINT RULE 26(f) REPORT

The Repair Order Detailed Reports for the Subject Vehicle.

The Service Manual applicable to the Subject Vehicle, subject to protective order.

## 5. MOTIONS

There are no motions currently pending before the Court.

### A.  **Plaintiffs' Position**:

Plaintiffs do not plan to file any dispositive motions at this time, but reserve the right to file a Motion to Remand as well as the right to file any discovery-related motions, should they become necessary.

### B.  **Defendant's Position**:

In the absence of any discovery disputes, and without waiving FCA's right to bring discovery or pre-trial motions as appropriate, FCA reserves its right to file any non-dispositive motions. FCA further believes that a protective order may be necessary. FCA will propose a reasonable protective order to Plaintiff, and also reserves the right to file a motion for protective order should the parties be unable to agree.

In addition, FCA will likely file a Motion for Judgment on the Pleadings challenging Plaintiffs' fraud claim, and it will also likely file a Motion for Summary Judgment/Adjudication as to Plaintiffs' Song-Beverly and Magnusson-Moss causes of action.

## 6. AMENDMENT OF PLEADINGS

The Parties agree to January 19, 2023 as the last day to amend pleadings. Plaintiffs do not currently anticipate filing an amended complaint, but reserve the right to do so in response to motions brought by Defendant, orders of this Court, or facts that arise during discovery.

## 7. EVIDENCE PRESERVATION

The Parties are aware of their discovery obligations under the Federal Rules of Civil Procedure and have taken reasonable measures to preserve relevant

documents, including ESI, that are maintained in the ordinary course of business in accordance with the Rules. Unless otherwise agreed, the Parties agree to meet and confer regarding formats for any relevant ESI should it be required.

## 8. INITIAL DISCLOSURES

The Parties will exchange initial disclosures within two weeks of the Case Management Conference.

## 9. DISCOVERY

### A.    Status of Discovery

No discovery has been propounded by either party in State or Federal Court.

### B.    Fact Discovery Completion Date

The parties agree to a fact discovery cut-off date of October 18, 2023.

### C.    Disclosure of Expert Witnesses

Expert Disclosure

The Parties agree that initial expert disclosures occur on October 18, 2023 and rebuttal expert disclosures occur on November 1, 2023.

Expert Discovery Cut-Off

The Parties agree to an expert discovery cut-off date of November 15, 2023.

### D.    Proposed Changes in Limits on Discovery

*Plaintiffs' Statement:*

Plaintiffs do not propose any changes. Plaintiffs do not agree to phased discovery.

*Defendant's Statement:*

FCA requests that discovery be conducted in phases, wherein the Plaintiffs' depositions occur prior to conducting additional discovery. FCA's position is that Plaintiffs' deposition are the most effective method by which to identify the facts and issues in the case that are in dispute.  This will eliminate overbroad discovery

that is not relevant to this litigation and does nothing to move the case closer to a resolution.

Also, FCA also believes that Plaintiffs' intended proposed discovery, including an ESI discovery, is disproportionate to the claims in the present case. FCA refutes that "class action" style discovery concerning its alleged internal investigation documents pertaining to the subject defects (including root cause analysis reports, internal emails pertaining to the cause of the defect and efficacy or inefficacy of proposed cures for the defects, other customer complaints and warranty claims pertaining to the same defects in vehicles of the same year make and model) is relevant, proper, or otherwise proportionate to the needs of this case. FCA's position is that in a breach of warranty case discovery must be guided by the proportionality requirement of Rule 26. See *Dao v. Liberty Life Assur. Co., Case* No. 14-cv-04749-SI (EDL), 2016 U.S. Dist. LEXIS 28268, at *7-8 (Feb. 23, 2016, N.D. Cal.) (noting that "a party seeking discovery . . . must show, before anything else, that the discovery sought is proportional to the needs of the case"). Accordingly, discovery in this matter should be focused on and limited to the symptoms the Subject Vehicle exhibited and the experiences Plaintiffs actually encountered and which were presented to FCA or an authorized dealership. See *Kaiser v. BMW of N. Am., No*. C-12-1311 DMR, 2013 U.S. Dist. LEXIS 63855, at *8 (May 2, 2013 N.D. Cal.) (noting the breadth and burden imposed by extensive discovery into other consumer transactions in a breach of warranty case outweighs its benefits.); *Samuel Velasco v. Mercedes-Benz USA, LLC et al.,* 2:18-cv-07880-MWF (SKx) (C.D. Cal. Jun. 13, 2019) (Motion to compel denied as to requests seeking documents relating to vehicles of the same make, model, and year that have the same engine defect because the definition of engine defect violated FRCP 34's reasonable particularity requirement.)

Discovery should thus be limited to information regarding the specific conditions, repairs and/or maintenance experienced by Plaintiffs in the Subject

Vehicle during Plaintiffs' ownership period which were presented to FCA or an authorized dealership. Extensive discovery into other vehicles should be excluded, or, to the extent allowed by the Court, should be limited to the specific conditions and repairs that are identified by Plaintiffs as giving rise to the claims in this case and for the same make and model year as the Subject Vehicle and be limited to specific databases identified by FCA depending on the category of information sought. Such limitations are appropriate to comply with the proportionality considerations set forth in Federal Rule of Civil Procedure 26(b). FCA does not agree that documents regarding vehicles other than the subject vehicle are relevant or proportional to the needs of the case.

Further, to the extent that Plaintiffs contend that multiple depositions of dealer personnel occurring on the same date shall count only as one deposition against the ten deposition maximum set forth in Federal Rule of Civil Procedure 30(a)(2)(A), FCA's position is that each individual noticed for deposition should count as one deposition against the ten deposition maximum.

### E.    Protective Order

The Parties anticipate a protective order being necessary for this case and will meet and confer regarding the terms of a protective order.  FCA reserves the right to file any necessary discovery motion, including, as noted, a Motion for Protective Order.

### F.    Timing, Sequencing, Phasing of Discovery

### Plaintiffs' Position:

Plaintiffs oppose phasing of discovery, but to the extent that discovery is phased Plaintiffs request that Defendant disclose the bulk of its discoverable material upfront due to Defendant's position of superior knowledge and access to data relevant to this case.

/ / /

/ / /

**Defendant's Position**:

As noted, FCA requests that discovery be conducted in phases, wherein the Plaintiffs' depositions occur prior to conducting additional discovery.

### G.    Subjects on Which Discovery May Be Needed

**Plaintiffs' Anticipated Discovery:**

Plaintiffs will seek discovery on at least the following subjects:

(a)    Defendant's positions on which alleged defects were successfully repaired and when they were repaired, which alleged defects are normal characteristics of the Subject Vehicle, and the factual basis for that claim, and which alleged defects are not covered by the warranty and the factual basis for that claim.

(b)    The information known and available to Defendant about the alleged defects.

(c)    Defendant's efforts to repair the Subject Vehicle.

(d)    Defendant's response to Plaintiffs' request that Defendants repurchase the Vehicle.

(e)    Defendant's policies and procedures for complying with the legal obligations at issue in the case.

(f)    Defendant's internal investigation and analysis into the alleged defects in the Subject Vehicle and in other vehicles of the same year, make, and model.

(g)    Defendant's advertising for the Subject Vehicle.

(h)    Plaintiffs' discovery will also include a deposition of Defendant's 30(b)(6) witness(es), a deposition of each of the relevant service personnel involved in the servicing of the Subject Vehicle, interrogatories, requests for admissions, and production demands.

Documents relevant to these topics are discoverable under *Donlen v. Ford Motor Co.* 217 Cal. App. 4th at 143-44 (2013) and *Santana v. FCA US, LLC* 56 Cal. App. 5th

334 (2020). Documents relating to investigations and analyses of the applicable defects are admissible because they are probative of nonconformities with the Subject Vehicle, a necessary element of Plaintiffs' case. Furthermore, these documents include technical information that Plaintiffs' expert needs in order to give reliable opinion testimony as to the nature of these defects. *Cf. Donlen v. Ford Motor Co.*, (2013) 217 Cal.App.4th 138, 154-55 ("*Donlen*") (affirming admissibility of expert testimony regarding similar problems in vehicles with same model transmission as the plaintiff). *See Santana v. FCA US, LLC*, 56 Cal. App. 5th 334, 347-48 (2020) ("Chrysler performed the bridge operation on Santana's vehicle in August 2014 with 30,262 miles on the odometer—within the three-year, 36,000-mile warranty. The internal e-mails demonstrating Chrysler's awareness of the safety risks inherent in the bridge operation were sent in September 2013, and thus Chrysler was well aware of the problem when it performed the bridge operation on Santana's vehicle. Thus, Chrysler's duty to repurchase or provide restitution arose prior to the expiration of the three-year, 36,000-mile warranty") *Margeson v. Ford Motor Co.,* No. B287445, 2020 WL 5641876, at *8 (Cal. Ct. App. Sept. 22, 2020) ("The magnitude of Ford's problem with its 6.0-liter engine was conveyed to the jury through testimony (videotaped deposition testimony and written affidavits) by various Ford managers. For example, John Koszewnik (Koszewnik), the director of Ford's North American diesel division from 2003 to 2006, testified about the magnitude and intractability of the problems plaguing the 6.0-liter engine. Koszewnik had been named director in 2003 in order to identify the problem with the engine and correct it. After three years on the job, Koszewnik sent an email to colleagues in February 2006 (five months before Margeson purchased his truck) observing with dismay that warranty repairs on the 6.0-liter engine were "running about $36 million a year but ... have been as high $5 million a month!"); *id.* at *9 ("[T]he jury could properly infer from the testimony at trial, the professional titles of the Ford employees themselves, and the hundreds of millions of dollars in monetary costs associated with problems with the 6.0-liter

engine (circumstantial evidence that managing agents of the company must have been involved with a problem of that scale) that fraud supporting punitive damages was attributable to Ford as a corporate entity."). Finally, the requested documents go to Defendant's knowledge of the defects and its ability to repair the defects. Consequently, the materials are relevant to whether Defendant's refusal to repurchase Plaintiffs' vehicle was based on a "good faith and reasonable belief that the facts imposing the statutory obligations were not present." *Kwan v. Mercedes Benz of North America, Inc., supra,* 23 Cal.App.4th at 185.

To the extent Defendant's position is that any discovery as to anything other than Plaintiffs' individual complaints and anything other than Plaintiffs' individual vehicle is overbroad and not relevant, the case law is clear that the scope of discovery includes documents that relate to similar defects experienced by other customers. *Donlen,* 217 Cal. App. 4th at 143-44, 153 (evidence of special service bulletins issued *before* Plaintiffs bought his truck and evidence of similar transmission problems in *other* trucks were relevant and admissible); *Doppes v. Bentley Motors, Inc.*, 174 Cal. App. 4th 967, 973, 978-979, 986 (2009) ("*Doppes*") (documents of warranty complaints, service histories, and employee records concerning the subject defect in *all* affected vehicles and the company's responses and instructions regarding cure were discoverable and relevant to issue of defendant's good faith treatment of the problem); *see Santana v. FCA US, LLC*, 56 Cal. App. 5th 334, 343 (2020) ("Almost a year later, in August 2014, an 'Executive Review' presentation was prepared that explained and illustrated the magnitude of the problem. This presentation would have been given to high level executives at Chrysler. As a corrective action, the executive review recommended a bypass, or bridge procedure, similar to that performed on Santana's vehicle. There is nothing in the executive review about the potential safety problem associated with the bridge procedure."); *see also Norton v. Super. Ct.*, 24 Cal. App. 4th 1750, 1760-1761 (1994) (an admissible document is necessarily discoverable); *Glenfed Development Corp. v. Superior Court*, 53 Cal. App. 4th 1113, 1117-1118 (if

evidence is admissible based on caselaw, then it is discoverable) (1997). *See also Berroteran v. Superior Court*, No. B296639, 2019 WL 5558830 (Cal. Ct. App. Oct. 29, 2019) (Ford's production of millions of documents and deposition testimony regarding internal investigations pertaining to defective Ford vehicles of several model years equipped with its 6.0-liter engine and potential safety hazards, including failure analysis, emails from engineers, documents from automotive safety office's design analysis group, etc., from class actions and lemon law cases around the country, held discoverable and likely admissible in individual lemon law case alleging SBA and fraud claims).

    Plaintiffs requests Defendant search for e-mails of those custodians that are and were responsible for investigating and analyzing the subject defects in vehicles of the same year, make, and model as the Subject Vehicle (e.g., engineers, etc.), and for the parties to meet and confer on those custodians whose e-mails need to be searched, as well as the search terms to be used.  See e.g., *Jensen v. BMW of North America, LLC* (S.D. Cal. Jan. 15, 2019) 328 F.R.D. 557, 563–564 (ordering BMW N.A to produce discovery as to vehicles of the same make, year and model as the subject vehicle, and ordering BMW N.A. to meet confer with Plaintiffs' counsel on search terms in a matter where violations of the Song-Beverly Act were alleged and that the discovery was proportion because it was limited to vehicles of the same year, make and model.); *Zargarian v. BMW of N. Am., LLC,* No. CV184857RSWLPLAX, 2019 WL 6111732, at *4 (C.D. Cal. Sept. 23, 2019), review denied, No. CV 18-4857-RSWL-PLA, 2019 WL 6111733 (C.D. Cal. Nov. 5, 2019) ("the Court determines that the topics to be covered at Mr. Murray's deposition shall be limited to (1) Mr. Murray's personal knowledge relating to defects in the N63 engine *as reflected in the exhibits produced by Plaintiffs in the Motion that were created by Mr. Murray* (i.e., Tabash Decl. Ex. 17), and further limited to (a) the specific N63 engine that was installed in Plaintiffs' vehicle and the issues relating to the N63 engine reflected in the repair history of Plaintiffs'

vehicle, and (b) the same version of the N63 engine that was installed in vehicles of the same make, model, and year as Plaintiffs' vehicle that experienced the same defects as reflected in the repair history of Plaintiffs' vehicle; and (2) to the documents produced in response to this Order as detailed below, relating to defects in the N63 engine that was used in Plaintiffs' vehicle **and** that were part of Plaintiffs' vehicle's repair history, whether in Plaintiffs' vehicle or in other vehicles of the same make, model, and year as Plaintiffs' vehicle. Additionally, Mr. Murray may be deposed with respect to any of the SIBs or Customer Care packages issued by BMW to the extent that work was actually performed on Plaintiffs' vehicle pursuant to that SIB or Customer Care package.")

Plaintiffs also requests that Defendant meet and confer with Plaintiffs on all the various databases that would have documents responsive to Plaintiffs' discovery requests, and to meet and confer regarding / provide Plaintiffs with the search terms used in searching these databases (e.g., defect codes, part numbers, etc.). Any argument by Defendant FCA US that the names of custodians, databases and/or search terms used are privileged and/or subject to attorney client work product should be rejected.  See e.g., N.D. Cal. Guidelines for Discovery of ESI, 1.02, 2.02-2.03; *De Abadia-Peixoto v. U.S. Dep't of Homeland Sec*., No. 11-cv-04001, 2013 U.S. Dist. LEXIS 120368, at *10 (N.D. Cal. Aug. 23, 2013) (ordering defendant to disclose search parameters and to meet and confer regarding their sufficiency); *Burd v. Ford Motor Co*., Case No. 13-cv-20976, 2015 U.S. Dist. LEXIS 88518, at *36-37 (S.D. W. Va. Jul. 8, 2015) (rejecting argument that disclosure of search methods and custodians would infringe on attorney work-product privilege).

### FCA's Anticipated Discovery:

As noted, FCA's position is that in a breach of warranty case discovery must be guided by the proportionality requirement of Rule 26. Discovery should be

limited to information regarding the specific conditions, repairs and/or maintenance experienced by Plaintiffs in the Subject Vehicle during Plaintiffs' ownership period which were presented to FCA or an authorized dealership. Extensive discovery into other vehicles should be excluded, or, to the extent allowed by the Court, should be limited to the specific conditions and repairs that are identified by Plaintiffs as giving rise to the claims in this case and for the same make and model year as the Subject Vehicle and be limited to specific databases identified by FCA depending on the category of information sought. Such limitations are appropriate to comply with the proportionality considerations set forth in Federal Rule of Civil Procedure 26(b). FCA does not agree that documents regarding vehicles other than the Subject Vehicle are relevant or proportional to the needs of the case.

FCA anticipates conducting discovery into the facts and circumstances surrounding the purchase, use, operation, maintenance, repair history, of the Subject Vehicle, including but not limited to: (1) whether Plaintiffs' vehicle had the alleged defects; (2) whether any such defects impaired the use, value or safety of the vehicle; (3) whether any such defects were repaired after a reasonable number of attempts; (4) Plaintiffs' communications with FCA and all dealership(s) regarding alleged defects with the Subject Vehicle; (5) the nature and extent of Plaintiffs' alleged damages; and (6) facts related to each of Plaintiffs' causes of action.

The subjects of discovery may change as discovery takes place and information is exchanged. FCA reserves the right to seek discovery regarding additional matters not listed herein.

FCA anticipates conducting Plaintiffs' depositions and the depositions of witnesses identified in Plaintiffs' disclosure, if any, and Plaintiffs' expert witnesses. FCA anticipates conducting an inspection of the Subject Vehicle. FCA further anticipates serving a set of Special Interrogatories; a set of Requests for Admission; a set of Requests for Production of Documents on Plaintiffs. FCA anticipates

conducting third-party discovery by subpoena and/or deposition surrounding Plaintiffs' Vehicle and damages claimed by Plaintiff.

FCA further contends that any order as part of this Court's case management order, requiring FCA "to meet and confer with Plaintiffs' counsel regarding the identity of its databases, the names of custodians that are and were responsible for analyzing the subject defects in vehicles of the same year, make, and model as the Subject Vehicle, as well as FCA's search terms for searching these databases," is premature at this time and reserve all rights, including objections thereto based on privilege, relevancy, and privacy rights.  FCA will seek a protective order if Plaintiffs seek trade secret/proprietary information or documents.

**10.  CLASS ACTIONS**

This case is not a class action.

**11.  RELATED CASES**

The Parties agree that there are no related cases or proceedings pending before another judge of this court, or before another court or administrative body.

**12.  DAMAGES/INSURANCE**

**Plaintiffs' Statement Regarding Relief:**

Plaintiffs seek damages as provided in Civil Code section 1794 and section 1793.2(d), and as provided in the Magnuson-Moss Act. These damages include "the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options . . . and including any collateral charges such as sales tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." Cal. Civ. Code § 1793.2(d). In addition, Plaintiffs seeks the measure of damages set forth in Civil Code section 1794(b)(1), or alternatively, 1794(b)(2). Plaintiffs also seeks actual damages.

Plaintiffs also seek various incidental and consequential damages, including but not limited to, registration and renewal fees, insurance premiums, rental car expenses, storage / maintenance expenses to be determined through the discovery process.

Plaintiffs also seek a civil penalty in the amount of up to two times actual damages pursuant to Civil Code section 1794, subdivision (c) and (e). If damages are found under a different measure, Plaintiffs will seek a penalty in the amount of two times those damages.

Plaintiffs seek punitive damages.

Plaintiffs seek prejudgment interest at the rate of ten percent per annum from the date the Vehicle was purchased, to the date judgment is entered. In the alternative, Plaintiffs seek prejudgment interest at the rate of ten percent per annum from the date Plaintiffs' Complaint was filed, to the date judgement is entered.

Plaintiffs also seek attorneys' fees, costs, and expenses.

**FCA's Statement Regarding Relief:**

As noted, FCA denies the allegations in the Complaint, denies Plaintiffs haves been damaged, and denies that the Subject Vehicle was defective or contained any nonconformities. FCA further denies that it violated Song-Beverly, or the Magnusson-Moss Warranty Act, or committed fraud as alleged, denies the Subject Vehicle qualified or qualifies for a repurchase, and also denies that Plaintiffs are entitled to any damages, including a civil penalty, punitive damages, or statutory attorney's fees/costs. Further, FCA contends that the following damage-related issues are also potentially to be determined:

A.    Whether FCA is entitled to a mileage offset under Civil Code section 1793.2(d)(2)(C).

B.    Whether FCA is entitled to further deductions under Civil Code section 1793.2(d)(2)(B) for nonmanufacturer items installed on the Subject Vehicle by a dealer or Plaintiffs.

**Insurance**

There is no applicable insurance relevant to this lawsuit that the parties are aware of.  FCA is self-insured up to $25,000,000 with respect to allegations contained in Plaintiffs' pleadings and has aggregate excess liability coverage.

**13.    SETTLEMENT AND ADR**

The Parties believe that there is a possibility of settlement, but they have yet to participate in any formal dispute resolution proceeding. The Parties will engage in informal settlement discussions prior to settlement if appropriate.

**Plaintiffs' Statement**:

Plaintiffs are amenable to private mediation, preferably with Grant Woodruff or Ron Akasaka, but not to any form of arbitration. Plaintiffs are not amenable to proceeding with binding arbitration.

**Defendant's Statement**:

FCA is open to private mediation, but only after preliminary discovery is completed, including the exchange of written discovery, and Plaintiffs' depositions and inspection of the Subject Vehicle.   FCA is also amenable to an early Settlement Conference conducted by a Magistrate Judge after preliminary discovery is completed.

**14.    CONSENT TO A MAGISTRATE JUDGE FOR ALL PURPOSES**

The Parties do not consent to proceeding before a Magistrate Judge.

**15.    SCHEDULE WORKSHEET**

The Parties propose the following deadlines:

*See attached Schedule.*

## 16.   TRIAL

The Parties propose a trial date of April 22, 2024.

**Plaintiffs' Statement**:

Plaintiffs has requested a jury trial. Plaintiffs estimates trial will last 5-7 days.

Tionna Dolin, Christine Haw and Matthew Pardo are lead trial counsel for Plaintiff.

**Defendant's Statement**:

FCA has requested a jury trial, and also estimates trial will last 5-7 days.

Spencer Hugret, Jeanette Suarez, and James Mayo, are expected to be lead trial counsel for FCA.

## 17.   OTHER MATTERS

Independent Expert or Master: The Parties do not believe that appointment of a Master or independent expert is warranted in this matter.

Manual for Complex Litigation: The Parties do not believe that the Manual for Complex Litigation should be used in whole or in part for this matter.

Other Issues: The Parties are unaware of any other matters that may facilitate the just, speedy and inexpensive disposition of this matter for the Court's consideration at the initial case management conference.


Respectfully Submitted,


DATED: November 21, 2022   GORDON REES SCULLY MASUKHANI, LLP

By: */s/ James P. Mayo*
Spencer P. Hugret
James P. Mayo
Reshma A. Bajaj
Attorneys for Defendant
FCA US LLC

1    DATED: November 21, 2022   STRATEGIC LEGAL PRACTICES, APC

2                                                By: */s/*
                                                 Ariel Harman-Holmes
                                                 Attorneys for Plaintiffs
3                                                      NATHAN ABLES and JENNIFER ABLES

JOINT RULE 26(f) REPORT

1

## CASE MANAGEMENT ORDER

2

3      The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED

4   ORDER is approved as the Case Management Order for this case and all parties

5   shall comply with its provisions.

6

7   IT IS SO ORDERED.

8

9   Dated:

10                                        _____

11                                        Hon. Maame Ewusi-Mensah Frimpong

12                                        UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISTRICT JUDGE MAAME EWUSI-MENSAH FRIMPONG**
**SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET**
Please complete this worksheet jointly and file it with your Joint Rule 26(f) Report.
The parties must make every effort to agree on dates or the court will set them.

| Case No.  8:22-cv-00147-MEMF-AS | Case Name:  Ables vs. FCA US LLC |
|---|---|

| Trial and Final Pretrial Conference Dates | PARTIES' AGREED-UPON DATES |
|---|---|
| Check one:  [X] Jury Trial   or   [ ] Bench Trial<br>[Monday] at 8:30 a.m. within 12-15 months of Scheduling Conference based on complexity]<br>Estimated Duration: _5-7____ Days | **04/22/2024** |
| Final Pretrial Conference ("FPTC" [L.R. 16], Hearing on Motions in Limine [Wednesday] at 9:00 a.m. at least 19 days before trial] | 04/03/2024 |

| Event [1]<br>Note: Hearings shall be on Thursdays at 10:00 a.m.[2]<br>Other dates can be any day of the week | Time Computation[3] | Pl(s)' Date mm/dd/yyyy | Def(s)' Date mm/dd/yyyy |
|---|---|---|---|
| Last Date to Hear Motion to Amend Pleadings or Add Parties [Thursday] | 6 weeks after scheduling conference | 01/19/2023 | |
| Fact Discovery Cut-Off<br>(no later than deadline for filing dispositive motion) | 24 weeks before FPTC | 10/11/2023 | |
| Expert Disclosure (Initial) | 23 weeks before FPTC | 10/18/2023 | |
| Expert Disclosure (Rebuttal) | 21 weeks before FPTC | 11/01/2023 | |
| Expert Discovery Cut-Off | 19 weeks before FPTC[4] | 11/15//2023 | |
| Last Date to Hear Motions [Thursday]<br>• Motion for Summary Judgment due at least 6 weeks before hearing<br>• All other motions due at least 4 weeks before hearing<br>• Opposition due 1 week after motion is filed<br>• Reply due 1 week after opposition is filed | 12 weeks before FPTC | 01/10/2024 | |
| Deadline to Complete Settlement Conference [L.R. 16-15]<br>Select one:  [ ] 1. Magistrate Judge (with Court approval)<br>             [ ] 2. Court Mediation Panel<br>             [ ] 3. Private Mediation | 10 weeks before FPTC | 01/24/2024 | |
| Trial Filings (first round)<br>• Motions in Limine<br>• Memoranda of Contentions of Fact and Law [L.R. 16-4]<br>• Witness Lists [L.R. 16-5]<br>• Joint Exhibit List [L.R. 16-6.1]<br>• Joint Status Report Regarding Settlement<br>• Proposed Findings of Fact and Conclusions of Law [L.R. 52] (bench trial only)<br>• Declarations containing Direct Testimony, if ordered (bench trial only) | 4 weeks before FPTC | 03/06/2024 | |
| Trial Filings (second round)<br>• Oppositions to Motions in Limine<br>• Joint Proposed Final Pretrial Conference Order [L.R. 16-7]<br>• Joint Agreed Upon Proposed Jury Instructions (jury trial only)<br>• Disputed Proposed Jury Instructions (jury trial only)<br>• Joint Proposed Verdict Forms (jury trial only)<br>• Joint Proposed Statement of the Case (jury trial only)<br>• Proposed Voir Dire Questions, if any (jury trial only)<br>• Evidentiary Objections to Declarations of Direct Testimony (bench trial only) | 2 weeks before FPTC | 03/20/2024 | |

[1]  The parties may seek dates for additional events by filing a separate stipulation and proposed order.
[2]  By default, all hearings shall proceed in-person, unless a request is made by the parties and granted by the Court. Requests to appear via Zoom must be e-filed by the Friday before the hearing and must indicate that counsel has met and conferred per Local Rule 7-3.
[3]  The numbers below represent the court's recommended timeline. The parties may propose alternate dates based on the needs of each individual case. Class Actions, patent, and ERISA cases may need to vary from the above.
[4]  The parties may choose to cut off expert discovery prior to the deadline to file a motion for summary judgment.